UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:12-cr-00399-JAM-1 |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE** |
| RAMON JOSE LEVARIO, | |
| Defendant. | |

Ramon Jose Levario, a prisoner serving his sentence at Federal Correctional Institution, Oakdale I (FCI Oakdale I), filed an emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mot. to Reduce Sent. ("Mot."), ECF No. 96. Levario argues his health conditions make him likely to contract COVID-19 and suffer life-threatening symptoms. Mot at 8-10. In light of the virus's rapid spread throughout FCI Oakdale I, Levario requests the Court either reduce his sentence to time served or allow him to serve the remainder of his sentence in home confinement. Mot. at 21. The Government opposes Levario's request, ECF No. 103; Levario filed a reply, ECF No. 106. Having carefully considered the parties' arguments, the Court denies Levario's motion.

I.  BACKGROUND

In 2014, Levario pled guilty to a single count of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). See Plea Agreement, ECF No. 51. After calculating Levario's advisory guideline range and considering the United States Probation Officer's Presentence Investigation Report ("PSR"), the Court imposed a low-end sentence: 121 months imprisonment followed by 60 months of supervised release. See March 3, 2015 Mins., ECF No. 79. Levario's expected release date is August 6, 2021. See Ramon Jose Levario, BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed June 11, 2020).

Over the past four months, the novel coronavirus known as COVID-19 has found its way into and throughout the federal prisons. As of June 15, 2020, over 6,000 federal inmates across the country have tested positively for COVID-19; 84 have died. See COVID-19 Coronavirus, FEDERAL BUREAU OF PRISONS, http://www.bop.gov/coronavirus (last accessed June 15, 2020). CDC research reveals that individuals with asthma, diabetes, hypertension, and/or severe obesity are among those at a high risk for contracting COVID-19 and suffering complications. See Coronavirus Disease 2019 (COVID-19), CENTER FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last accessed June 11, 2020). Levario suffers from each of these health conditions. Mot. at 15 (citing PSR at 14 ¶ 57, ECF No. 72; BOP Health Services Clinical Encounter, dated April 3, 2020, Ex. B to Mot. at 2, ECF No. 97).

///

II.   OPINION

A.   <u>Legal Standard</u>

Generally, a court may "not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); <u>Dillon v. United States</u>, 560 U.S. 817, 824-25 (2010).  However, the First Step Act (FSA) amended 18 U.S.C. Section 3582 to grant federal courts sentence-modification authority in specific circumstances.  18 U.S.C. § 3582(c)(1)(A).  A district court may modify the term of imprisonment if (1) the modification would not undermine the sentencing factors set forth in Section 3553(a), and (2) "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  The Sentencing Commission defines "extraordinary and compelling reasons" to include reasons related to (a) the medical condition of the defendant, (b) the age of the defendant, (c) certain family circumstances, and (d) other specific reasons.  <u>See</u> U.S.S.G. § 1B1.13, Application Note 1.  The defendant bears the initial burden of putting forth evidence that establishes an entitlement to a sentence reduction.  <u>United States v. Sprague</u>, 135 F.3d 1301, 1306-07 (9th Cir. 1998).

B.   <u>Analysis</u>

1.   <u>Exhaustion Requirement</u>

Section 3582(c) imposes an exhaustion requirement upon federal inmates requesting compassionate release.  Before requesting sentence modification from a court, a defendant must submit a request for release with the BOP and, then, either: (1) administratively appealing an adverse result or (2) waiting for thirty (30) days to pass.  Id.  Only then may a defendant, or

the Director of the BOP, file a motion for modification.  18 U.S.C. § 3582(c)(1)(A).

Levario represents that he submitted two requests for compassionate release or home confinement to the FCI Oakdale I warden—one on April 8, 2020 and one on May 18, 2020.  Mot. at 5.  BOP claims that it lacks records of either request.  See Opp'n at 12.  And Levario was unable to make or keep copies of his submissions.  Mot. at 5.  The government argues the Court should construe this evidentiary void as a failure on Levario's part to satisfy his burden of proof on this issue.  Id. at 12.  The Court disagrees.  The government fails to provide any compelling reasons why BOP's recent recordkeeping is entitled to more credibility than Levario's representations.  See Reply at 2-6.

Over the past few months, the BOP's recordkeeping has—on more than one occasion—painted an incorrect picture about defendants' exhaustion efforts.  See id. at 2-3.[1]  The Court does not have any reason to assume bad faith.  But these mistakes, even if innocent, come at a cost.  And it is the defendants seeking emergency relief who invariably foot the bill.

Levario's nearly-contemporaneous letters to the Federal Defender's Office lend further credibility to the notion that

---

[1] Citing United States v. Young, No. 3:19-cr-05055-BHS, at *5 (W.D. Wa. May 22, 2020); United States v. Brunston, No. 18-CR-40145 (S.D. Dak.); United States v. Saldana, No. 16-CR-00116 (D. Ida.); United States v. Resnick, No. 14 CR 810 (CM), 2020 WL 1651508, at *5 (S.D.N.Y. Apr. 2, 2020); United States v. Bailie, No. 96-CR-00001 (D. Nev.); United States v. Trent, No. 16-CR-00178-CRB-1, 2020 WL 1812214, at *1 (N.D. Cal. Apr. 9, 2020); United States v. Bess, No. 16-CR-156, 2020 WL 1940809, at *2 (W.D.N.Y. Apr. 22, 2020); United States v. Turner, No. 17-132 (E.D. Pa); United States v. Tran, No. CR 08- 00197-DOC, 2020 WL 1820520, at *1 (C.D. Cal. Apr. 10, 2020).

Levario submitted requests for compassionate release to the warden when he said he did. See Exs. A-C to Reply. After filing his April 8 request to the warden, Levario waited 30 days before filing this motion. The Court therefore finds Levario exhausted his administrative remedies. See U.S. v. Trent, No. 16-cr-00178-CRB-1, 2020 WL 1812214, at *1 (N.D. Cal. Apr. 9, 2020) ("Confronted with[] conflicting evidence, the Court credits [the defendant's] representation, which is based on direct knowledge rather than failure to confirm the existence of a filing from over a month ago.").

                  2. Extraordinary and Compelling Circumstance

     After a defendant has met the threshold exhaustion requirement, he must demonstrate that "extraordinary and compelling reasons warrant" a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Id. Congress has not defined what constitutes as "extraordinary and compelling" other than that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t). Instead, it has delegated that responsibility to the Sentencing Commission. Id. Before Congress passed the FSA, the Commission concluded "extraordinary and compelling reasons" were limited to four scenarios. U.S.S.G. § 1B1.13. These scenarios include: (A) the medical condition of the defendant, (B) the age of the defendant, (C) family circumstances, and (D) a catchall provision for other reasons. Id.

     A defendant's medical condition may constitute an "extraordinary and compelling reason" if the defendant is

1  suffering from "a serious physical or medical condition," "a
2  serious functional or cognitive impairment," or is "experiencing
3  deteriorating physical or mental health because of the aging
4  process," which "substantially diminishes the ability of the
5  defendant to provide self-care within the environment of a
6  correctional facility and from which he or she is not expected
7  to recover." See U.S.S.G § 1B1.13(1)(A) & cmt. 1.  Levario
8  suffers from four comorbidities: asthma, diabetes, hypertension,
9  and severe obesity.  Mot. at 15.  Each of these health
10 conditions, alone, would increase Levario's risk of contracting
11 COVID-19.  Together, the risk is indisputable.  See Ex. C to
12 Mot.
13      Indeed, the government all but concedes that Levario's
14 health conditions—particularly within a facility that touts such
15 a poor record in containing COVID-19—amount to "extraordinary
16 and compelling" circumstances.  Opp'n at 16 ("Levario's diabetes
17 is a serious, chronic health condition that is potentially
18 qualifying under the [Sentencing Commission's] policy statement
19 in light of the risk of [COVID-19] infection.") (citing
20 Coronavirus Disease 2019 (COVID-19)—Groups at Higher Risk for
21 Severe Illness, CENTER FOR DISEASE CONTROL, available at
22 https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
23 precautions/groupsat-higher-risk.html (last accessed June 1,
24 2020)); see also Memo. for Director of Bureau of Prisons:
25 Increasing Use of Home Confinement at Institutions Most Affected
26 by COVID-19 (Apr. 3, 2020) (listing FCI Oakdale as one of three
27 BOP facilities "experiencing significant levels of infection"),
28 available at https://www.justice.gov/file/1266661/download.

6

1    Given Levario's incarceration at FCI Oakdale I and the
2 prevalence of COVID-19 at that facility, the Court finds
3 Levario's health conditions present extraordinary and compelling
4 reasons for modifying his sentence.  The Court nonetheless
5 denies Levario's motion because granting early release would
6 undermine the section 3553(a) sentencing factors.
7         3.   Sentencing Factors
8    In deciding a motion for compassionate release, a court can
9 neither disregard nor undermine the relevant factors set forth
10 in 18 U.S.C. Section 3553.  18 U.S.C. § 3582(c)(1)(A)(i); see
11 Dillon, 560 U.S. at 822.  The Court agrees with the government
12 that these factors do not warrant a sentence reduction.  See
13 Opp'n at 18-20.
14    In considering "the history and characteristics of the
15 defendant," 18 U.S.C. § 3553(a)(1), the Court finds that Levario
16 appears to still lay claim to the dangerous role he held with
17 the Norteños prior to his incarceration.  Levario's PSR states
18 that he was a "designated hitter" for the Norteño gang at the
19 time of his arrest.  PSR at 5 ¶ 5.  Leading up to that arrest, a
20 confidential source conducted several controlled drug purchases
21 with Levario.  During those purchases, Levario revealed that he
22 possessed, operated, and sold assault weapons.  Id. ¶¶ 5-13.
23 Then, while incarcerated, Levario was found with gang
24 paraphernalia.  Ex. 3 to Opp'n.  Levario does not meaningfully
25 refute this evidence of his continued gang affiliation.
26    Instead, Levario identifies several considerations that
27 support reducing his sentence: his underlying conviction is for
28 a non-violent drug crime; his prior convictions are, likewise,

predominantly non-violent; his criminal conduct is attributable to drug use that started when he was a kid; and his familial and community connections are eager to support him and hold him accountable if he's released. Mot. at 19. But the Court already bore these factors in mind when deciding to grant Levario a low-end sentence, rather than the high-end sentence Probation recommended. These factors support the Court's original sentence; they do not warrant further reduction.

Levario also argues his post-conviction conduct supports early release. While incarcerated, Levario obtained a GED, participated in educational programs surrounding drug use and anger management, and largely avoided disciplinary actions. Mot. at 19. The Court recognizes the value of these rehabilitative efforts. But it does not find that they outweigh the danger posed by Levario's continued gang affiliation. See 18 U.S.C. § 3553(a)(2)(C).

The risk COVID-19 presents to the country's incarcerated population is not lost on this Court. But the Court cannot ignore the potential danger posed by commuting this particular sentence. Upon considering each of the section 3553(a) factors, the Court does not find that either a sentence reduction or home confinement is appropriate here.

### III. ORDER

For the reasons set forth above, the Court DENIES Defendant's Motion to Reduce Sentence.

IT IS SO ORDERED.

Dated: June 15, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE

8